## MERCHANTS' BANK OF PITTSBURGH v. SLAGLE.

Where the trustees of a bankrupt who were appointed under sect. 5103 of the Revised Statutes distributed the proceeds of the sale of his property pursuant to an order entered by the proper District Court sitting in bankruptcy, and affirmed by the Circuit Court in the exercise of its supervisory jurisdiction, — *Held*, that the order is binding, and that the creditors are thereby concluded.

APPEAL from the Circuit Court of the United States for the Western District of Pennsylvania.

The facts are stated in the opinion of the court.

*Mr. John Dalzell* and *Mr. J. F. Slagle* for the appellant.

*Mr. George Shiras, Jr.,* for the appellees.

MR. JUSTICE MILLER delivered the opinion of the court.

Christopher Zug and Charles H. Zug, composing the partnership of Zug & Co., were, on their own petition of May 11, 1876, declared bankrupts by the District Court for the Western District of Pennsylvania.

At the first meeting of the creditors, Slagle and Miller were appointed trustees, and Smith, Dunlap, and Clarke a committee of creditors, under sect. 5103 of the Revised Statutes. This action of the creditors was duly approved by an order of the District Court.

The trustees disposed of the property of the bankrupts, of which the Sable Iron Works, sold for $130,000, constituted the principal item. They then submitted their final accounts of the copartnership assets and the individual assets, and, on the committee approving them, made an order of distribution among the creditors.

Thereupon Coleman and others, creditors of Christopher Zug

individually, applied to the District Court and obtained a rule on the trustees whereby a report of their order for distribution was filed in that court. They then took exceptions to the report, in which the separate creditors of Charles H. Zug joined, on the ground that the Sable Iron Works had never been partnership property, but that the title was held by the two Zugs as tenants in common, in the proportion of four-fifths by Christopher and one-fifth by Charles. On final hearing these exceptions were sustained, and an order was made directing that the proceeds of the sale of the iron works be distributed on that basis to the private creditors of the individuals who composed the partnership.

An appeal to the Circuit Court from this order was dismissed, on the ground that no appeal lay from such an order. At the same time, in a proceeding under the supervisory power of the Circuit Court, a full hearing was had on the merits, and the action of the District Court affirmed.

From that order an appeal was taken to this court, which was dismissed on the ground that, being a proceeding under the supervisory power of the Circuit Court, it was not reviewable here. *Nimick* v. *Coleman*, 95 U. S. 266.

In that case it was urged that the District Court, in assuming to control the trustees in the distribution of the fund in their hands, acted without jurisdiction, and that its order was void; to which this court responded by saying: "If, as is claimed, the District Court acted without jurisdiction or in a manner not to bind the parties, its decree as made was void; and the aggrieved partnership creditors may very properly consider whether they cannot proceed in equity to call the trustees to a proper accounting and distribution. Upon that question, however, we express no opinion."

It is said that the suit now before us on appeal was commenced under this suggestion, in which the partnership creditors, calling into court the trustees and the individual creditors, seek to have the sum arising from the sale of the Sable Iron Works distributed among the former alone.

As this would require the order of the District Court on that subject to be set aside and reversed, or disregarded as a nullity, we are compelled to consider, before we proceed further, if this

can be done. All known modes of review of that order have been exhausted. The appeal from it to the Circuit Court was dismissed, whether rightfully or not cannot now be inquired into. On the petition of review, which was the legitimate mode of correcting the error, if one existed, the Circuit Court affirmed the order of the District Court; and from that decree, as we decided in the case above cited, there could be no further appeal.

It only remains to inquire if it was absolutely void for want of jurisdiction in the District Court to make it.

It is strenuously argued that when the estate of the bankrupt passes to the trustees appointed under the provisions of sect. 5103 of the Revised Statutes, the power of the District Court as a court of bankruptcy over them and their proceedings ceases, and that they become invested with a judicial function, in the exercise of which they are amenable to no other court. That as to collection and distribution of the bankrupt's assets, the case has been taken out of the category of bankrupt proceedings and wholly withdrawn from the control of the District Court.

It is difficult to perceive any plausible reason for this idea.

The meeting of the creditors, which may appoint the trustees and the committee, must be one held after the court has made an adjudication of bankruptcy and ordered such a meeting. The resolution of the meeting for settling the estate under this section by trustees and a committee, and the appointment of the trustees and committee, must be presented to the court and approved by it, or they are of no force.

The trustees are declared to have and to hold the property in the same manner and with the same powers and rights, in all respects, as the bankrupt would have had if no proceeding in bankruptcy had been taken, or as the assignee in bankruptcy would have done had such resolution not been passed, showing thus that their powers were compounded of that of the owner and of the ordinary assignee in bankruptcy.

The court by order is to direct all acts and things needful to be done to carry into effect the resolution of the creditors, and the winding up and settlement of any estate under the provision of this section shall be deemed to be proceedings in bank-

ruptcy, and the trustees shall have all the rights and powers of assignees in bankruptcy.

It further provides that the court may compel the production of witnesses, books, and papers before the trustees, in the same manner as in other cases of bankruptcy, and that the bankrupt shall in like manner be entitled to his discharge.

Under sect. 4972 of the Revised Statutes, "the jurisdiction conferred upon the District Courts as courts of bankruptcy extends . . . to the collection of all the assets of the bankrupt; . . . to the adjustment of the various priorities and conflicting interests of all parties; . . . to the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties and due distribution of the assets among all the creditors; . . . to all acts, matters, and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt and the close of the proceedings in bankruptcy."

Is there anything in sect. 5103 in conflict with this comprehensive declaration of the powers of the District Court over a case in bankruptcy "until the final distribution and settlement of the estate"?

On the contrary, it is one of the express provisions of the latter section that "the winding up and settlement of any estate under provisions of this section shall be deemed to be proceedings in bankruptcy," and the section is full of directions to the court to aid in this settlement, and the trustees are twice assimilated in their functions to those of an assignee in bankruptcy.

We are unable to see any judicial functions conferred on these trustees. Their powers, though somewhat enlarged, are in the main the same as those of the assignee, and are properly ministerial. It is true, they may do many things without an order of the court which an assignee could not do, such as selling property, allowing claims, and compromising disputes about rights of property. We might even hold that their order of final distribution would be valid if uncontested. *Moors* v. *Albro*, 129 Mass. 9.

But in all this we are of opinion that their action is subject to the revision and final control of the District Court whenever

that is invoked in aid of the substantial rights of any one interested in what they do. It is inconceivable that Congress intended to create in them an *imperium in imperio*, whose actions, however wrong, could be reached by no tribunal whatever. And if any supervision of their acts is to be had at all, it is very clear that the District Court is the one to whom that duty is confided.

· A case bearing a strong analogy to this is that of *Wilmot* v. *Mudge*, 103 U. S. 217, in which it was decided that a composition order, under the act of June 22, 1874, c. 390, was a bankruptcy proceeding, and that, notwithstanding the act declared that such a composition should be binding on all the creditors, it did not discharge the bankrupt from debts created by fraud; because that act was *in pari materia* with the general bankrupt law, and was not inconsistent with sect. 5117 of the Revised Statutes, in regard to debts created by fraud.

That was a stronger case than this in favor of the argument that a composition was a proceeding which took the case out of the other provisions of the bankrupt law, for the statute which authorized it was passed long after the general law and after the revision.

In the present case the trustee section is a part of the original statute of bankruptcy, and contains in itself the declaration that what is done under it is a part of the bankruptcy proceeding.

As we are satisfied that the District Court, in correcting the order of distribution made by the trustees, acted within its powers, and as that order has passed beyond judicial review, except as it has already been had on petition to the Circuit Court, that order must govern the decision of this case, and the decree of the Circuit Court dismissing the bill is

*Affirmed.*